IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

SERGIU STRANGO,                    §
                   Plaintiff,      §
                                   §
v.                                 §            CIVIL ACTION NO. H-07-2902
                                   §
RAY HAMMOND, *et al.*,             §
                   Defendants.     §

## MEMORANDUM AND ORDER

Pending before the Court is Defendants Dr. Michael Liebl and Dr. Will Musick's Motion to Dismiss [Doc. # 23].  Plaintiff has responded [Doc. # 38] and Defendants have replied [Doc. # 41].  Upon review of the parties' submissions, all pertinent matters of record, and applicable law, the Court concludes that Drs. Liebl and Musick's motion is **granted in part** and **denied in part**.

## I.      FACTUAL BACKGROUND

In August 2006, Plaintiff Sergiu Strango was completing his penultimate class towards receiving an undergraduate pharmacy degree from the University of Houston ("University"), PHAR5681, a clinical course in infectious diseases.  The University's pharmacy program required completion of three years of academic coursework and one year of clinical rotations, which were conducted at various off-campus sites, including Methodist Hospital in Houston, where Strango was assigned as a clinical

intern for PHAR5681.

While interning at Methodist Hospital on the morning of July 28, 2006, Strango took a photograph on his cellular phone. Strango claims that the photo was of a classmate and that students had long been encouraged by the University to take pictures while on rotations in order to memorialize their experiences. A hospital nurse who witnessed Strango take the photo apparently believed that Strango photographed a hospital patient while the patient was being attended to by medical staff—a violation of HIPAA.[1] The nurse requested that Strango immediately delete the photo, which he did. The incident was then reported to Strango's supervisors at Methodist, Defendants Liebl and Musick.

According to Strango, Drs. Liebl and Musick immediately discussed the issue with him and requested that he make a written apology to the hospital nurse and review literature on HIPAA. Strango agreed and resumed his clinical rotation duties. That afternoon, at the direction of Liebl, Strango met with Defendants Dr. Ray Hammond and Dr. Nancy Ordonez, coordinators of the University's pharmacy program, and relayed the incident to them. Hammond counseled Strango, who left the

---

[1]     The actual content of the photo is in dispute. Strango claimed, during a hearing on a request for a temporary injunction, that while the photo was of a classmate, in the background was a group of people assembled around a patient. He claims that the patient was not visible in the picture and could not be identified, and offered a drawing of the photo as he remembers it. *See* Hearing Exhibit List [Doc. # 18], Plaintiff's Exhs. 8, 9.

meeting believing that the incident was resolved.

On Monday, July 31, 2006, Strango returned as scheduled to Methodist Hospital and delivered his written apology to the hospital nurse.  However, within a couple hours of his arrival, he was removed from his duties and eventually told by Dr. Liebl, after Drs. Liebl and Musick met with University officials, that the photo incident warranted Strango's removal from the rotation.  The next day, Strango was informed by Defendant Hammond that he would receive a failing grade for the rotation. Strango had previously failed PHAR5681 and, thus, pursuant to a University policy prohibiting students from failing the same class more than once, he was suspended from the pharmacy program.

Strango unsuccessfully appealed the University's decision.  He claims that at one point, Defendant Ohia promised Strango a letter of good standing, which would enable him to complete his degree at another school, but that that promise was subsequently rescinded.  As a result, Strango has been unable to transfer to another college to obtain a pharmacy degree.

Strango asserts that neither the University, nor Methodist Hospital, ever communicated to him a policy prohibiting the taking of photographs.  He further asserts that no such policy exists. Strango maintains that while HIPAA prohibits photographing  "full face images" of patients, the picture he took did not contain any

identifying characteristics of a hospital patient.   Strango further asserts that Defendants have used the apology letter Strango wrote at the behest of Drs. Liebl and Musick as an admission of wrongdoing.  Strango contends that his dismissal from the rotation and hence, from the University, did not comply with University procedures, and that Defendants simply did not like him and acted in bad faith with regard to the incident.  Strango now sues Defendants—University instructors and administrators and his Methodist Hospital supervisors—alleging a variety of state and federal law claims.

## II.   <u>STANDARDS OF LAW</u>

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is viewed with disfavor and is rarely granted.  *Manguno v. Prudential Prop. and Cas. Ins. Co.*, 276 F.3d 720, 725 (5th Cir. 2002).  The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true.  *Id.*  A claim is legally insufficient under Rule 12(b)(6) "only if there is no set of facts that could be proven consistent with the allegations in the complaint that would entitle the plaintiff to relief."  *Power Entm't, Inc. v. Nat'l Football League Prop., Inc.*, 151 F.3d 247, 249 (5th Cir. 1998).  However, "a statement of facts that merely creates a suspicion that the pleader might have a right of action" is insufficient to overcome a motion to dismiss.  *Campbell v. City of San Antonio*, 43 F.3d 973, 975

(5th Cir. 1995) (quoting 5 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 1216 at 156–59).

A cause of action can fail to state a "claim upon which relief can be granted" if, *inter alia*, it fails to comply with the requirements of Rule 8(a)(2).  *See, e.g.*, *Atwood v. Humble Oil & Ref. Co.*,243 F.2d 885 (5th Cir. 1957); *Buerger v. Sw. Bell Tel. Co.*, 982 F. Supp. 1247, 1249–50 (E.D. Tex. 1997); *see also Bank of Abbeville & Trust Co. v. Commonwealth Land Title Ins. Co.*, 201 F. App'x 988, *2 (5th Cir. Oct. 9, 2006) ("[A] Rule 12(b)(6) motion to dismiss for failure to state a claim may be a proper vehicle to challenge the sufficiency of a pleading under Rule 8."). Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  The United States Supreme Court has made clear, however, that a plaintiff is obligated to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1964–65 (2007) (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986)) (On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 127 S. Ct. at 1965. "Rule 8(a)(2) still requires a showing, rather than a blanket assertion, of entitlement to relief.  Without some

factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only fair notice of the nature of the claim, but also grounds on which the claim rests."  *Id.* at 1965 n.3 (internal quotations omitted). When the complaint contains inadequate factual allegations, "this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court."  *Id*. at 1966.  "[A] district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed."  *Id*. at 1967 (quoting *Associated Gen. Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519, 528 n.17 (1983)).

In addition, Rule 9 of the Federal Rules of Civil Procedure requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  FED. R. CIV. P. 9(b); *see Leatherman v. Tarrant County Narcotics Intelligence Unit*, 507 U.S. 163, 168–69 (1993); *Hart v. Bayer Corp*., 199 F.3d 239, 247 n.6 (5th Cir. 2000).  In particular, the pleadings should "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent."  *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004) (quoting *Williams v. WMX Tech., Inc.*, 112 F.3d 175, 177–78 (5th Cir. 1997)).  Rule 9(b) requires a plaintiff to allege the existence of *facts* sufficient to

warrant the pleaded conclusion that fraud has occurred.  *See In re Haber Oil Co.*, 12 F.3d 426, 439 (5th Cir. 1994) (emphasis added).  Because the requirements of Rule 9 are more stringent than those for Rule 8, the Supreme Court's decision in *Twombly* applies with at least equal force to the Rule 9 pleading requirements.

Finally, although a Court, in considering a motion to dismiss for failure to state a claim, must ordinarily limit itself to the contents of the pleadings, "documents that a defendant attach[s] to a motion to dismiss [may be] considered part of the pleading if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)); *see also Wilkins v. North American Construction Corp.*, 173 F. Supp. 2d 601, 617 (S.D. Tex. 2001).

III.  **ANALYSIS**

Strango has variously asserted several claims against Defendants Liebl and Musick[2]—civil rights violations cognizable under 42 U.S.C. § 1983 and common law claims of promissory estoppel, fraud, and negligent misrepresentation.[3]  Liebl and

---

[2]     Although Strango claims to be bringing all claims against Defendants in their "official and individual capacities," his more specific allegations concerning his § 1983 claim state that he only proceeds against Liebl and Musick in their "personal capacities."  *See* First Amended Complaint [Doc. # 19], ¶ 4.06.

[3]     Strango also seeks a declaratory judgment concerning the "contractual obligations" of the
                                                                                              (continued...)

Musick seek dismissal of each claim.

### A.    42 U.S.C. § 1983

---

3        (...continued)
Defendant University administrators, "Hammond, Ordonez, Woo, Smesny, and Ohia" and
"a declaration of all Defendants' alleged violations of Plaintiff's due process and equal
protection rights under the Texas and U.S. Constitutions, and of Plaintiff's statutory rights
under 42 U.S.C. § 1983 . . . ."  *See* First Amended Complaint [Doc. # 19], ¶¶ 6.01–.02.  The
Court has broad discretion "in determining whether to decide a declaratory judgment suit."
*Torch, Inc. v. LeBlanc*, 947 F.2d 193, 194 (5th Cir. 1991) (quoting *Rowan Cos., Inc. v.
Griffin*, 876 F.2d 26, 29 (5th Cir. 1989)); *see also Public Affairs Assocs. v. Rickover*, 369
U.S. 111, 112 (1962).  However, "[c]ourts may not dismiss requests for declaratory judgment
relief 'on the basis of a whim or personal disinclination.'"  *Travelers Ins. Co. v. La. Farm
Bureau Fed'n, Inc.*, 996 F.2d 774, 778 (5th Cir. 1993) (quoting *Rowan*, 876 F.2d at 750).
Among the factors to be considered by a court is whether retaining the claim "would serve
the purposes of judicial economy." *Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d
599, 602 (5th Cir. 1983).  Strango's declaratory judgment claim, at least to the extent it
implicates Defendants Liebl and Musick, essentially duplicates his substantive claims; the
issues for which Strango seeks declaratory relief will be resolved in the context of those
claims.  The Court perceives nothing to be gained by maintaining a declaratory judgment
action against these defendants and thus, Strango's declaratory judgment claim is dismissed
as to Liebl and Musick.  *See, e.g., Xtria LLC v. Tracking Sys.*, No. 3:07-CV-0160-D, 2007
U.S.Dist. LEXIS 44964, *9–*10 (N.D. Tex. June 21, 2007) (Fitzwater, J.) (dismissing a
declaratory judgment claim that replicated the plaintiff's substantive claims).

Strango has also alleged "[d]eprivations of [the] Texas Due Course of Law [Clause]."  *See*
First Amended Complaint [Doc. # 19], ¶ 5.01.  Liebl and Musick argue that this claim, when
read in the context of Strango's complaint as a whole, does not implicate them, as Strango
allegedly seeks no remedies against them for this claim.  *See* Motion to Dismiss [Doc. # 23],
at 9.  Although Strango has not specifically responded to this argument, the Court is
unpersuaded that dismissal of this claim at this stage is warranted.  Strango's position is that
"the Texas constitutional guarantee of due course of law is greater than federal due process
and equivalent to federal equal protection."  Thus, his claims under the federal Constitution
"automatically create[] a Texas constitutional claim . . . ."  *See* First Amended Complaint
[Doc. # 19], ¶ 5.01.  The Court notes that, at least "[i]n cases involving academic decisions,
Texas courts interpreting the Due Course Clause of the Texas Constitution have looked to
federal case law interpreting federal due process rights."  *Wheeler v. Miller*, 168 F.3d 241,
247 (5th Cir. 1999).  However, it is unclear how persuasive Texas courts deem federal
constitutional holdings, and how analogous Texas constitutional jurisprudence actually is
to federal constitutional holdings.  Nonetheless, as the viability of this claim was not
otherwise addressed by the parties, the Court does not reach at this time whether Strango has
adequately pled Texas constitutional claims analogous to those pled in his § 1983 claim.

Strango has asserted violations of his civil rights, cognizable under 42 U.S.C. § 1983. Specifically, he alleges violations of procedural due process, substantive due process, stigma due process, and equal protection. Section 1983 provides for a private civil action to redress constitutional deprivations visited upon a plaintiff by a defendant clothed in the authority of the state. Thus, "[t]o state a claim under § 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States[,] and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 525 (5th Cir. 1994). Further, a plaintiff asserting a § 1983 cause of action against a state actor in his individual capacity must make specific factual allegations that support the individual defendants' role in the constitutional deprivation at issue. *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002). Defendants Liebl and Musick strenuously argue that Strango's § 1983 claims must be dismissed because they are not "state actors" for purposes of the statute. Further, they argue that Strango has not properly pled claims under § 1983. Alternatively, assuming that they are state actors and that Strango has pled viable § 1983 claims, Liebl and Musick assert entitlement to qualified immunity on these claims.

### 1.    The "State Actor" Requirement.

"Section 1983 does not reach all constitutional injuries, but only those caused

by persons acting 'under color of state law.'" *Earnest v. Lowentritt*, 690 F.2d 1198,

1200 (5th Cir. 1982) (citing 42 U.S.C. § 1983; *Flagg Bros., Inc. v. Brooks*, 436 U.S.

149 (1978); *Jackson v. Metro. Edison Co.*, 419 U.S. 345 (1974)).  "To act under color

of state law for § 1983 purposes does not require, however, that the defendant be an

officer of the state."  *Earnest*, 690 F.2d at 1200.  "Private acts or conduct may incur

liability under § 1983 if the individual is a 'willful participant in joint action with the

State or its agents.'"  *Id.* (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152

(1970)).  This determination "depends upon the specific facts and circumstances

surrounding the challenged action."  *Albright v. Longview Police Dep't*, 884 F.2d 835,

838 (5th Cir. 1989).  If there is a sufficient nexus between the private actor's allegedly

unconstitutional conduct and state involvement, the private actor may by deemed a

state actor for purposes of § 1983.  *See id.* (citing *Nat'l Collegiate Athletic Ass'n v.*

*Tarkanian*, 488 U.S. 179 (1988)).  Such a nexus may be found where the state

"create[s] a legal framework that governs the conduct" of the private actor, where a

state "delegate[s] its traditional powers to private actors," or where the state

"establish[es] a 'symbiotic interrelationship' with a private entity."  *Id.* (citing *Lugar*

*v. Edmondson Oil Co.*, 457 U.S. 922 (1982); *N. Ga. Finishing Co. v. Di-Chem, Inc.*,

419 U.S. 601 (1975); *West v. Atkins*, 487 U.S. 42 (1988)).

      Regardless of the test applied, in the usual case, "a private party has taken the

decisive step that caused the harm to the plaintiff, and the question is whether the State was sufficiently involved to treat that decisive conduct as state action." *NCAA v. Tarkanian*, 488 U.S. 179, 192 (1988).  Liebl and Musick, relying on this reasoning, and focusing on an analogous case from the Southern District of Ohio, *Siskaninetz v. Wright State Univ.*, 175 F. Supp. 2d 1018 (S.D. Ohio 2001), argue that they cannot be considered state actors because they did not make the "decisive decision" to remove Strango from the University's pharmacy program.  Strango has responded that the court in *Siskaninetz*, in the context of a motion for summary judgment, relied upon evidence adduced by the parties to conclude that the defendant, a "preceptor" associated with Wayne State University's nursing program, had only limited authority over the grading decisions at issue, and hence, was not a state actor for purposes of § 1983.

Strango's argument is well taken.  It may ultimately be determined that Liebl and Musick, as Strango's clinical instructors and/or supervisors, had insufficient roles in the decision to remove Strango from the University's pharmacy program to render them state actors.  However, at this point in this litigation, Strango has pled sufficient facts to suggest otherwise.  Strango, in his First Amended Complaint, points to several interactions between Liebl and/or Musick and other University officials that permit—at least for pleading purposes—the inference that Liebl and Music made

decisive decisions relating to Strango's dismissal from his PHAR5681 rotation and subsequent removal from the pharmacy program.  Indeed, Strango alleges that he was informed that he would be dismissed from his rotation, which directly precipitated his removal from the pharmacy program, only after he observed University officials meet with Liebl and Musick.[4]  Because it cannot be determined from the pleadings how influential Liebl and Musick were in making the decisions challenged by Strango in this case, dismissal of Strango's § 1983 claims on "state actor" grounds is unwarranted.  Accordingly, Liebl and Musick's motion to dismiss is denied as to this theory.

### 2.    Sufficiency of Pleading of 42 U.S.C. § 1983 Claims.

#### a.    *Procedural Due Process*

Strango's first theory of relief under § 1983 is that he was denied procedural due process when he was removed from the University's pharmacy program without "some notice and an opportunity to be heard."[5]  Liebl and Musick argue that Strango's claim must be dismissed because he does not have a protected property right or liberty interest in his University education, as is necessary to entitle him to procedural due process under the Constitution.  Additionally, Liebl and Musick argue that even if

---

[4]    *See* First Amended Complaint [Doc. # 19], ¶ 3.09; *see also id.* ¶¶ 3.07, 3.15, 3.21 (detailing other interactions between Liebl and Musick and University officials).

[5]    *See id.* ¶ 4.07.

Strango has a constitutional interest in his education, he has received all the procedural protections to which he is entitled.

It is well settled that "students, whether dismissed for academic or disciplinary reasons, are not entitled to as much procedural protection under the Fourteenth Amendment as employees who are terminated from their jobs." *Davis v. Mann*, 882 F.2d 967, 973–74 (5th Cir. 1989). However, courts have made clear that students are entitled to some minimal process. In so holding, the existence of at least a "liberty" interest in higher education has consistently been assumed and accepted. *See Shaboon v. Davis*, 252 F.3d 722, 730 (5th Cir. 2001). "Protected interests in property are normally 'not created by the Constitution. Rather, they are created and their dimensions are defined' by an independent source such as state statutes or rules entitling the citizens to certain benefits." *Goss v. Lopez*, 419 U.S. 565, 572–73 (1975) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 477 (1972)); *see also Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 82 (1978). To that end, the existence of a property right in "tax-supported education," specifically at the high school level, has been well established, and courts have suggested that such a right may extend to tax-supported higher education as well. *See Goss*, 419 U.S. at 576 n.8; *see also Parker v. Duffey*, No. 06-50794, 2007 U.S. App. LEXIS 24703, *6–*7 (5th Cir. Oct. 22, 2007); *Univ. of Tex. Med. Sch. v. Than*, 901 S.W.2d 926, 930 n.1 (Tex.

1995).  Liebl and Musick dispute whether a property right exists for non-compulsory tax-supported education.  However, the Court need not reach that issue at this time. To the extent Liebl and Musick are arguing that Strango has *no* constitutionally protected procedural due process rights, they are mistaken.  At a minimum, the Court assumes that Strango has a protected liberty interest in his undergraduate education.

As to whether Strango has already received all the procedural protections to which he is entitled, such a determination cannot be made solely on the pleadings. First, the scope of procedures required under the Constitution depends on whether a dismissal from an academic program was for "academic" or "disciplinary" reasons. *See Horowitz*, 435 U.S. at 86.  Liebl and Musick argue at length that Strango's dismissal from PHAR5681 and his subsequent removal from the University's pharmacy program was for an "academic" reason.  Accordingly, "far less stringent procedural requirements" are necessary.  *See id.*  However, Strango has provided sufficient allegations to raise an issue that his dismissal was disciplinary.  In any event, such a determination is better addressed when the parties adduce evidence, such as on a motion for summary judgment.

Of course, the Court need not ever decide whether Strango's dismissal was for academic versus disciplinary reasons *if* it is clear from his pleadings that he received adequate process in either event.  Liebl and Musick argue in favor of such a holding,

pointing out that even for a disciplinary dismissal, all that is required is "an 'informal give-and-take' between the student and the administrative body dismissing him that would, at least, give the student the 'opportunity to characterize his conduct and put it in what he deems the proper context.'" *Horowitz*, 435 U.S. at 85–86 (quoting *Goss*, 419 U.S. at 584). Again, however, Strango has made sufficient allegations to meet his Rule 12(b)(6) burden on the issue of whether he received adequate procedural protections related to his dismissal from PHAR5681 and his resulting removal from the pharmacy program.

Strango has alleged that he was disciplined for conduct that he had no reason to believe was actionable. He alleges further that he was afforded insufficient process in that he was misled by Liebl and Musick with regard to the apology letter and then not afforded notice and an opportunity to be heard. Further, he contends that the decisions made by Defendants were arbitrary and capricious, which the Court cannot decide on the basis of the pleadings alone. In short, Strango has alleged a viable claim under § 1983 for procedural due process violations. Liebl and Musick's motion to dismiss this claim is denied.

### b.   *Substantive Due Process*

Strango next alleges that he was denied substantive due process when he was subjected to "arbitrary and capricious decision-making by a state institution, acting

through its officials," who exercised "bad faith and ill will . . . unrelated to [Strango's] academic performance" in PHAR5681.[6]   The Supreme Court has recognized "that decisions in the academic setting are subject to "a narrow avenue for judicial review' under a substantive due process standard." *Wheeler*, 168 F.3d at 249 (quoting *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 227 (1985)).  The, "[c]ourts must accept, as consistent with due process, 'an academic decision that is not beyond the pale of reasoned academic decision-making when viewed against the background of [the student's] entire career at the University . . . .'" *Id.* at 250 (quoting *Ewing*, 474 U.S. at 227–28).  Thus, in order to prevail on a substantive due process claim, Strango must be able to demonstrate that the decisions made by his instructors were "such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment." *Ewing*, 474 U.S. at 225 (internal citations omitted).

Liebl and Musick argue conclusorily that Strango's allegations demonstrate on their face that his dismissal from PHAR5681 was rational and reasoned.  The Court is not convinced.  Strango has alleged that he was held to a standard of conduct for which he had no prior notice and that this fact, coupled with the severity of the discipline meted out for his alleged transgression, constitutes actionable violations of

---

[6]      *Id.* ¶ 4.18.

substantive due process.  Whether Strango will ultimately succeed in meeting his

substantial burden of proving that Defendants' decisions were academically irrational

remains to be seen.  However, he has pled a viable claim under 42 U.S.C. § 1983

premised on alleged violations of his substantive due process rights.  Liebl and

Musick's motion to dismiss this theory of § 1983 relief is denied.

### c. *Stigma Due Process*

Strango's third theory of relief under 42 U.S.C. § 1983 is that Liebl and Musick

subjected him to stigma, actionable under the Due Process Clause of the Fourteenth

Amendment, by accusing him "of violating HIPAA rules by taking a photo of a

patient," when in fact, Strango allegedly never took such a photo.[7]  Defamation by the

government might be actionable where "a [§] 1983 claimant show[s] a stigma *plus* an

infringement of some other interest."  *San Jacinto Sav. & Loan v. Kacal*, 928 F.2d

697, 701 (5th Cir. 1991) (emphasis in original).  "To fulfill the stigma aspect of the

equation, a claimant must 'prove that the stigma was caused by a false

communication.'" *Id.* (quoting *Codd v. Velger*, 429 U.S. 624 (1977)).  "To establish

the 'infringement' portion of the . . . test, a claimant must establish that the state

sought to remove or significantly alter a life, liberty, or property interest recognized

and protected by state law or guaranteed by one of the provisions of the Bill of Rights

---

[7]      *Id.* ¶ 4.21.

that has been 'incorporated.'" *Id.* at 701–02 (citing *Paul v. Davis*, 424 U.S. 693, 710–11 (1976)).

Strango has clearly pled facts bearing on the first prong of this test.  He has alleged that Liebl and Musick falsely accused him of wrongdoing, and has offered sufficient factual allegations to justify discovery on the extent to which those accusations have been, or will be, communicated. *See Ortwein v. Mackey*, 511 F.2d 696, 699 (5th Cir. 1975) ("[I]nfringement of one's liberty interest can be found only where the governmental agency has made or is likely to make the allegedly stigmatizing charges public 'in any official or intentional manner, other than in connection with the defense of [related legal] action.'" (quoting *Kaprelian v. Tex. Woman's Univ.*, 509 F.2d 133, 139 (1975))).  Strango has stated his desire to continue his education at another institution and obtain employment in the pharmacy field, and has asserted that the sharing of the allegedly false statements concerning his conduct will severely hamper these efforts.[8]  On the record before the Court, it cannot be said that the accusations are sufficiently confidential, and that they have not, and likely will never be, shared outside of the University setting in connection with Strango's dismissal from the pharmacy program.  *See Wells v. Doland*, 711 F.2d 670, 676 (5th Cir. 1983); *see also Whiting v. Univ. of S. Miss.*, 451 F.3d 339, 347 (5th Cir. 2006);

---

[8]     *See* First Amended Complaint [Doc. # 19], ¶ 4.20.

*Kelleher v. Flawn*, 761 F.2d 1079, 1987–88 (5th Cir. 1985); *Ortwein*, 511 F.2d at 699.

As to the second prong, Texas has recognized that, at a minimum, university students have a constitutionally protected liberty interest in their education. *See Tran*, 901 S.W.2d at 930 & n.1[9]; *see also Parker*, 2007 U.S. App. LEXIS 24703, *6–*7 ("The Supreme Court has recognized that students at tax-supported educational institutions subjected to remedial actions resulting in removal from the academic setting are entitled to the protections of the Due Process Clause." (citing *Goss v. Lopez*, 419 U.S. 565, 576 n.8 (1975))).  Thus, Strango has pled a viable claim for stigmatic harms cognizable under 42 U.S.C. § 1983.  Accordingly, Liebl and Musick's motion to dismiss this claim is denied.

### d.    *Equal Protection*

Finally, Strango asserts recovery under 42 U.S.C. § 1983 for violations of his equal protection rights.[10]  Specifically, Strango asserts that he was treated differently from other University students and was impermissibly "singled out for sanctions for the photo-taking incident . . . solely out of [the] 'irrational prejudice'" of the named

---

[9]    *Tran* was decided in the context of the plaintiff's graduate school education.  However, there is nothing in the *Tran* court's decision that would suggest that the liberty interest in higher education would not also extend to an undergraduate student.

[10]    Defendant Liebl is not named in this claim.  *See id.* ¶ 4.24.

Defendants.[11]

In the ordinary case, a "selective enforcement" equal protection claim is premised on allegations of wrongful conduct motivated by the discriminatory animus against a member of a protected class. *See Levi v. Univ. of Texas*, 840 F.2d 277, 279 (5th Cir. 1988). Thus, to successfully bring a claim, "a plaintiff must prove that the government official's acts were motivated by improper considerations, such as race, religion, or the desire to prevent the exercise of a constitutional right." *Bryan v. City of Madison*, 213 F.3d 267, 277 (5th Cir. 2000). By contrast, Strango's claim is premised on the theory that Musick acted "irrationally" and out of "personal vindictiveness."[12] Courts "have recognized successful equal protection claims brought by a 'class of one' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). However, Strango admits that the viability of a claim premised on a defendant's "subjective ill will"—as opposed to a claim that a defendant acted irrationally or arbitrarily—in this circuit is "unclear."[13] *See Willowbrook*, 528 U.S. at 564–65;

---

[11]     *Id.*

[12]     *See id.* ¶ 4.23; *see also* Plaintiff's Response to Liebl and Musick's Motion to Dismiss [Doc. # 38], ¶ 43.

[13]     *See id.*

*Wheeler*, 168 F.3d at 251–52; *Levi*, 840 F.2d at 279–80; *see also Reed v. Davis*, No.
SA-02-CA-858-XR, 2004 U.S. Dist. LEXIS 21876 (W.D. Tex. Aug. 12, 2004).

Having reviewed the case law, the Court declines to determine definitively, on
the very limited briefing available thus far, whether an equal protection claim
premised on "personal vindictiveness" or "subjective ill-will" is cognizable in this
instance.  Assuming without deciding that such a claim is legally viable, Strango has
alleged sufficient facts to go forward on his theory.  *See Willowbrook*, 528 U.S. at
565.  Similarly, Strango has alleged sufficient facts to proceed on an equal protection
claim premised on Liebl and Musick's alleged "irrational" treatment of him.  In any
event, it must be noted that either theory of relief will be subject to rational basis
review.  *See Wheeler*, 168 F.3d at 252; *Levi*, 840 F.2d at 279–80.  Thus, if Strango
fails to succeed on his § 1983 substantive due process claim, his equal protection
claim will necessarily fail as well.  Alternatively, if it appears that Strango can meet
his burden on the substantive due process theory, the Court will invite additional
briefing on the viability of his "personal vindictiveness" equal protection theory.
Accordingly, Musick's motion to dismiss this claim is denied.

### 3.    Qualified Immunity.

Finally, assuming that they are state actors and that Strango has pled viable
claims, Liebl and Musick assert entitlement to qualified immunity from Strango's

§ 1983 claims.

Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The doctrine shields public officials, acting within the scope of their authority, from civil liability for performing discretionary functions "insofar as their conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have known." *Flores v. City of Palacios*, 381 F.3d 391, 394 (5th Cir. 2004); *see also Harlow v. Fitzgerald*, 475 U.S. 800 (1982); *Cozzo v. Tangipahoa Parish Council*, 279 F.3d 273, 284 (5th Cir. 2002). "The Supreme Court has characterized the doctrine as protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

In assessing qualified immunity, the Court must conduct a bifurcated analysis. *See, e.g.*, *Collins v. Ainsworth*, 382 F.3d 529, 537 (5th Cir. 2004). First, the Court must decide whether the plaintiff has alleged a constitutional violation and, if so, whether the violation is of a "clearly established" constitutional right. *Id.*; *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001). A right is "clearly established" for purposes of qualified immunity if "[t]he contours of the right [are] sufficiently clear [such] that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). If the Court finds a

violation of a clearly established right, the defendant is nonetheless entitled to immunity if "[his] conduct was objectively reasonable" in light of "law which was clearly established at the time of the disputed action." *Collins*, 382 F.3d at 537; *see also Goodson v. City of Corpus Christi*, 202 F. 3d 730, 736 (5th Cir. 2000).

In claiming entitlement to qualified immunity, Liebl and Musick argue that they are not state actors for purposes of § 1983, but that if the Court finds that they are state actors, it is not on the basis of "clearly established" law.  Hence, they conclude that they are immune from suit regardless of their status as state actors.  Liebl and Musick's circular reasoning misses the point.  Qualified immunity is a defense available to state actor defendants; it is not a defense to *being* a state actor.  In this case, because there are fact issues whether Liebl and Musick are state actors for purposes of § 1983, the Court cannot determine whether they are even qualified to assert entitlement to immunity.  Thus, Liebl and Musick's motion to dismiss on qualified immunity grounds is denied without prejudice, subject to reurging should the Court later determine that they are state actors under 42 U.S.C. § 1983.

## B.    PROMISSORY ESTOPPEL

In "Count Four" of his First Amended Complaint, Strango asserts that Defendant Liebl "promised" Strango that if Strango wrote an apology letter regarding the photo-incident and reviewed literature on HIPAA, the entire matter would be

resolved.  Strango asserts that he complied with Liebl's request only to have Liebl and Defendant Musick "turn[] over the apology letter to . . . [University] coordinators as evidence used to support [Strango's] dismissal from the [PHAR5618] rotation."[14]

Although ordinarily a defensive theory, promissory estoppel is an available cause of action for "a promisee [who] acts to his detriment in reasonable reliance on an otherwise unenforceable promise . . . ." *Wheeler v. White*, 398 S.W.2d 93, 96 (Tex. 1965).  "The requisites of promissory estoppel are (1) a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantial reliance by the promisee to his detriment." *Boales v. Brighton Builders, Inc.*, 29 S.W.3d 159, 166 (Tex. App.–Houston [14th Dist.] 2000, no pet.).  Liebl and Musick argue that Strango has failed to adequately plead a promissory estoppel claim.  The Court is unpersuaded. Strango's complaint is highly detailed and relates with specificity the events leading to and following his dismissal from the University's pharmacy program.[15]  Strango adequately alleges facts covering each of the elements of the promissory estoppel claim.  Liebl and Musick have been placed on notice of Strango's claim, which easily complies with the requirements of Federal Rule of Civil Procedure 8(a).  Accordingly, Liebl and Musick's motion to dismiss this claim is denied.

---

[14]    *See* First Amended Complaint [Doc. # 19], ¶ 7.01.

[15]    Indeed, Liebl and Musick devote more than five pages of their Motion to Dismiss to restating all of the facts alleged by Strango in his First Amended Complaint.  *See* Motion to Dismiss [Doc. # 23], at 2–7.

## C.   __FRAUD__

In "Count Five" of his First Amended Complaint, Strango alleges that Liebl, in conjunction with Defendant Musick, committed fraud when he allegedly told Strango that the photo-incident would be resolved if Strango wrote an apology letter and reviewed literature on HIPAA.[16] Strango contends that Liebl "intended for [Strango] to act on the representation to his detriment."[17]

To recover for fraud, a plaintiff must prove: "(1) that a material representation was made; (2) that it was false; (3) that the speaker knew it was false when made or that the speaker made it recklessly without any knowledge of the truth and as a positive assertion; (4) that he made it with the intention that it be acted upon by the other party; (5) that the party acted in reliance upon it; and (6) damage." *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 222 (Tex. 1992) (citing *Stone v. Lawyers Title Ins. Corp.*, 554 S.W.2d 183, 185 (Tex. 1977)).

Claims of fraud are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). Although "[t]he particularity demanded by Rule 9(b) necessarily differs with the facts of each case, . . . Rule 9(b) requires the plaintiff to allege 'the particulars of time, place, and contents of the false representations, as well

---

[16]      *See* First Amended Complaint [Doc. # 19], ¶ 8.01.

[17]      *See id.* ¶ 8.02.

as the identity of the person making the misrepresentation and what [that person] obtained thereby.'" *Tuchman v. DSC Commc'n Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994) (quoting *Tel-Phonic Servs., Inc.*, 975 F.2d at 1139); *see also Askanase v. Fatjo*, 148 F.R.D. 570, 574 (S.D. Tex. 1993) ("The allegations should allege the nature of the fraud, some details, a brief sketch of how the fraudulent scheme operated, when and where it occurred, and the participants."). "[G]eneral allegations, which do not state with particularity what representations each defendant made, do not meet this requirement." *Unimobil 84, Inc. v. Spurney*, 797 F.2d 214, 217 (5th Cir. 1986).

As noted in Section III.B., *supra*, Strango's First Amended Complaint is highly detailed. It clearly meets the requirements of Rule 9(b), as Strango recites with particularity the "who, what, when, where, and how of the alleged fraud." *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1174 (5th Cir. 2006).   Liebl and Musick's argument that Strango has merely provided "a formulaic recitation of the elements of fraud" is frivolous and wholly unsupported by even a cursory reading of the complaint.  Accordingly, Liebl and Musick's motion to dismiss this claim is denied.

### D.   **NEGLIGENT MISREPRESENTATION**

Finally, in "Count Six," which is only alleged against Defendant Liebl, Strango claims that Liebl "did not exercise reasonable care in communicating . . . information to [Strango]" regarding the potential repercussions of Strango writing an apology

letter concerning the photo-incident.  Strango further asserts that he justifiably relied on Liebl's representations to his detriment, thus rendering Liebl liable for negligent misrepresentation.[18]

The elements of a cause of action for negligent misrepresentation are: "(1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies false information for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation."  *Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991) (internal quotation marks omitted).

Given that "negligent misrepresentation claims are only subject to the liberal pleading requirements of Rule 8(a)," *Am. Realty Trust, Inc. v. Hamilton Lane Advisors, Inc.*, 115 F. App'x 662, 668 (5th Cir. 2004), for the same reasons stated in Section III.B, *supra*, Strango has made sufficient allegations to survive a motion to dismiss.  Liebl's Motion to Dismiss this claim is denied.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, the Court concludes that dismissal of Strango's

---

[18]     *See id.* ¶¶ 9.01–.02.

claims on a motion to dismiss is not warranted.  This conclusion does not imply that Strango will, or will not, prevail against a summary judgment motion or at trial.  It is therefore

**ORDERED** that Dr. Michael Liebl and Dr. Will Musick's Motion to Dismiss [Doc. # 23] is **GRANTED IN PART and DENIED IN PART**.   Plaintiff's declaratory judgment claim against Drs. Liebl and Musick is dismissed; the parties may proceed on all remaining claims.  It is further

**ORDERED** that Drs. Liabl and Musick are to file an answer to Plaintiff's First Amended Complaint within **twenty days** of the date of this Memorandum and Order.

SIGNED at Houston, Texas on this <u>21st</u> day of **February, 2008**.


Nancy F. Atlas
United States District Judge